Battle, J.
 

 The 12th section of the Revenue Law for 1866, imposes a tax upon “ Every resident of the State who brings into the State, or buys from anon resident, whether by sample or otherwise, spirituous liquors, &c., for the purpose of sale, fifteen per cent, on the amount of his purchases,” and on “every person who buys to sell again spirituous liquors, &c., from the maker in this State, his agent, factor, or commission merchant, ten per cent, on the amount of his purchases.” The question presented on the record in this case is whether a tax law, which thus discriminates between articles imported and articles manufactured in the State, is constitutional aud valid, at least as to the excess of the tax imposed upon the imported over that upon the native article. This is a question of some importance to the tax payer, but of much greater importance to the State, which for the last fifty years has been deriving no inconsiderable revenue from such discriminating imposts. See, among other acts, those of 1822, (Taylor’s Revisal, ch. 1129,) of 1836, (Rev. Stat., ch. 102, sec. 10,) and of 1854, (Rev. Code, ch. 99, sec. 30.)
 

 The objection to the validity of the act in question is founded upon its alleged repugnance to the provisions of the Constitution of the United States, which declare that “no State shall, without the consent of Congress, lay any imposts, or duties on imports or exports, except what shall be absolutely necessary for executing its inspection laws,”' and that “Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes.” Const. of U. S., Art. I, sec. 10. par. 2; and sec. 8, par. 3.
 

 
 *116
 
 The clause which prohibits the State from imposing a tax •or duty on imports has been held to extend not only to the act of importation, but to the article imported, while it is kept for sale in bulk or package, but the restriction is removed the moment the article is withdrawn from the market as a subject of commerce and diverted to the importer’s prh vate use, or is offered for sale in a peculiar mariner, as by auction, or by hawking or peddling, or in any manner by retail. See
 
 McCulloch
 
 v.
 
 State of
 
 Maryland, 4 Wheat., 316;
 
 Brown
 
 v.
 
 State of Maryland,
 
 12 Wheat., 419;
 
 Wynne
 
 v.
 
 Wright,
 
 1 Dev. & Bat., 19. The reason given why the imported article ceases to be exempted from State taxation as soon as it ceases tó be kept in bulk by the importer, as a ¡subject of commerce, is that it then becomes incorporated with the mass of the property in the State; and as it enjoys ■the protection of the laws of the State it must bear its proportion of the burden necessary for the State government. The authorities to which we have referred show further, that even when the article has been sold in bulk by the importer, it will become liable in the hands of the vendee or Assignee to the taxing power of the State.
 

 The power of the State to tax goods which have been imported and afterwards mixed up with the other property in the State having been shown to exist, notwithstanding the ■clauses of the Constitution of the United States to which we have referred, the only enquiry which remains is, whether ■a discrimination can be made between such goods and those •of a like kind, which are of the growth or manufacture of the State.
 

 Upon this question the court, in deciding the case of
 
 Wynne
 
 v.
 
 Wright
 
 above referred to, thus expresses itself: It would seem to follow that a tax may constitutionally be imposed on such goods thus appropriated to private use, or. ■offered for sale in a peculiar manner, although they be taxed by *the name of goods imported, or goods not of the produc
 
 *117
 
 tion of the State. For a State may certainly exercise her owns discretion in selecting the objects of taxation amongst those which are liable to taxation, and the name given in the statute is only the mode of designation or description.
 

 “ Whenever the power of the State to tax arises, it is because the thing taxed is not ‘an article imported,’ as understood in the Constitution; and if the State tax it by that name, that cannot bring it again, and by force thereof, within the Constitution, and make it to be such ‘ an article imported’ as is not subject to taxation.”
 

 The court, notwithstanding this strong expression of opinion, declined to make it an adjudication, because it was unnecessary to the decision of the case then before them.
 

 But the reasoning seems to be unanswerable, and we do-not see how the conclusion can be resisted. It is but the operation of the principle stated by the Supreme Court of the United States in the case of
 
 Nathan
 
 v.
 
 The State of
 
 Louisiana, 7 How., 73, that “ the taxing power of a State is-one of its attributes of sovereignty. And where there has-been no compact with the Federal government, or cession of jurisdiction for the purposes specified in the Constitution, this power reaches all the propertj* and business within the State which are not properly the means of the general government, and as laid down by this court, it may be exercised at the discretion of the State. The only restraint is found in the responsibility of the members of the Legislature to their constituents.”
 

 The power to discriminate in laying taxes upon goods imported, after they have become incorporated with the general mass of property in the State, being thus vindicated, it is manifest that there is no difference in principle between the taxing of goods of the like kind grown or manufactured in the State, and the imposition of a heavier tax on the former than upon the latter. It follows that the plaintiff, in the case now before us, was rightfully compelled to pay
 
 *118
 
 the higher tax which the law imposed upon the amount of his purchase out of the State. He did not pretend that the article which he had imported had been sold in bulk, but admitted that it was liable to taxation, by voluntarily paying the same imposts upon his purchase as if it had been made in the State. The judg'ment of nonsuit given against him in the Superior Court must therefore be affirmed.
 

 Per Curiam. Judgment affirmed.